Filed April 13, 1886.

---

No. 12,456.

NAYLOR ET AL. *v.* SIDENER.

RECEIVER. — *Appeal from Order Appointing.* — *Complaint.* — *Practice.* — No formal ruling will be made upon the sufficiency of the complaint as a pleading in the action, on an appeal from an interlocutory order appointing a receiver, although it may be looked to, in connection with the evidence, in determining whether a receiver ought to be appointed.

SAME.— *Weight of Evidence.*—*Discretion of Circuit Court.*—Where the evidence is conflicting, the Supreme Court will not weigh it, or overrule the discretion which the circuit court exercises in the appointment of a receiver in advance of the final hearing upon the merits of the controversy.

SAME.—*Equitable Jurisdiction.*—When property is conveyed in trust, its proper management and application, for the purposes of the trust, become subjects of equitable jurisdiction.

SAME.—*Receiver for Property Already Held in Trust.*—*Partnership.*—When property has been conveyed by a firm to a person to be held by him as trustee for the payment of certain firm debts, a receiver may afterwards be appointed where there is a controversy as to the application of the proceeds of the property.

From the Montgomery Circuit Court.

*R. J. Greene, E. C. Snyder, W. T. Brush* and *R. B. F. Peirce,* for appellants.

*P. S. Kennedy, S. C. Kennedy, T. H. Ristine, H. H. Ristine, G. D. Hurley, B. Crane, J. Wright, J. M. Seller* and *M. W. Bruner,* for appellee.

NIBLACK, C. J.—Complaint by Martin W. Sidener against Joseph A. Naylor, William H. Durham, John S. Brown, James Brown and the First National Bank of Crawfordsville, charging that for about one year previous to the 4th day of February, 1885, the said Joseph A. Naylor was engaged in the grocery trade in the city of Crawfordsville, in this State; that, on that day, he sold a one-half interest in his stock in trade and business to one Martin V. Sidener, the father of the plaintiff, who was admitted as a co-partner with the said Naylor, under the firm name of Naylor & Sidener, and under which name said partners continued in business until the 4th day of March then next ensuing, at which time the plaintiff purchased the interest of the said Martin V. Sidener in the stock and business in question, and was admitted by said Naylor as a co-partner in such stock and business under the same firm name; that under such firm name, the plaintiff and the said Naylor continued the business as previously conducted until the 6th day of May, 1885, when said firm pretendingly sold out its stock in trade to the defendants John S. Brown and James Brown, who assumed the firm name of John S. Brown & Son; that previous to said last mentioned sale, the plaintiff and the said Naylor, as such partners, had contracted debts for goods purchased for their firm, in the aggregate sum of about $3,000; that the business had been from the first in the hands and under the active management of the said Naylor, the plaintiff being inexperienced in mercantile pursuits and ignorant of the business standing of the firm; that the said Naylor, as an inducement to obtain the plaintiff's consent to said pretended sale, and intending to deceive and defraud him, represented

Naylor *et al. v.* Sidener.

to the plaintiff that their creditors were pressing them, and that the firm was about to fail in business; that it had become necessary for them to make sale of their entire stock of goods for the purpose of paying their debts; that relying upon these representations of Naylor, and for the purpose of paying all the debts of the firm, the plaintiff consented to the pretended sale to Brown & Son; that the said Naylor was at the time of making such representations in secret communication with his co-defendants, for the purpose of getting the plaintiff out of the store, to the end that they could thereby better manage to defraud the plaintiff and a part of the creditors of the firm; that the sale of the property in the grocery store was in bulk, and for the alleged price of $6,500, but it was really worth from eight to ten thousand dollars; that at the time of such sale, the defendant, the First National Bank of Crawfordsville, of which its co-defendant Durham was then the president, held the individual note of Martin V. Sidener for the sum of $4,000, upon which the said Naylor was surety; that the firm of Naylor & Sidener, as it was reorganized by the admission of the plaintiff as a member of it, was in no manner responsible for the payment of such note; that Naylor, at the time of the transfer of the property to Brown & Son, was individually indebted to the said National bank in the sum of something more than $800; that it had been arranged between the defendants that the individual indebtedness of the said Martin V. Sidener and the said Naylor to the bank, above described, should be paid out of the proceeds of the sale to Brown & Son, as well as other individual indebtedness of the said Naylor, and that the said Brown & Son should hold the property so purchased by them in trust for the payment of such individual indebtedness and certain specified partnership debts only, leaving a considerable part of the partnership debt unprovided for; that these arrangements concerning the application of the proceeds of such sale were all kept concealed from the plaintiff, and that he, in consequence, knew

nothing of such arrangements at the time they were made; that the defendant John S. Brown was at the time an officer of and interested in the First National Bank of Crawfordsville, and was then, as he still is, acting in its interest; that the said Naylor has since continued in the possession of the store, claiming to act under the direction of Brown & Son; that if the arrangements made by the defendant concerning the proceeds of such property, as herein above stated, shall be permitted to be carried out, it will result fraudulently and injuriously as against the interests of the plaintiff, as well as a large part of the creditors of the firm of Naylor & Sidener, of which the plaintiff is a member as stated. Wherefore the plaintiff demanded that the sale to Brown & Son should be rescinded; that a receiver should be appointed to take charge of the property in controversy, and to collect the proceeds of such of the property as may have been sold in the course of trade; that an accounting be had between the plaintiff and the defendants, and that he might have all other proper relief.

The complaint is a very voluminous one, and we have only given what we regard as a fair synopsis of its most material averments, all of the averments being supported by the oath of the plaintiff.

The defendants appeared to the action, and filed a joint as well as several demurrers to the complaint. Pending the consideration of the demurrers, and before a decision had been made upon any one of them, the plaintiff moved for the appointment of a receiver as prayed for by his complaint, and the circuit court, after hearing the oral testimony of witnesses and evidence adduced in the form of affidavits, appointed Thomas N. Lucas a receiver to take possession and charge of all the property transferred to Brown & Son, as herein above set forth, to collect all debts due the firm of Naylor & Sidener, and to demand and receive from the said Brown & Son the proceeds of so much of the property as had been sold and disposed of by them. The defendants re-

served exceptions to the order thus appointing a receiver, and it is from that order that this appeal is prosecuted under section 1231, R. S. 1881.

It is insisted that the circuit court erred in appointing a receiver:

*First.* Because the complaint did not state facts sufficient to constitute a cause of action against the defendants, or any one or more of them.

*Secondly.* Because the application for the appointment of a receiver was not sustained by sufficient evidence.

It was held by this court, in the case of *Hursh* v. *Hursh,* 99 Ind. 500, that no formal ruling would be made upon the sufficiency of the complaint, as a pleading in the action, upon an appeal from an interlocutory order appointing a receiver. That holding was based upon the theory that such an appeal only brings before this court the proceedings which immediately led to the appointment of a receiver, and that, consequently, the pleadings, and all other matters pertaining to the action, remain open and undetermined, and still within the control of the court from which the appeal is taken.

Counsel contend that the holding in that cause is inconsistent with the doctrine of the case of *Main* v. *Ginthert,* 92 Ind. 180, since, in the latter case, we considered the sufficiency of the cross complaint which led to the appointment of the receiver, and is wrong on principle when tested by analogous cases. But in this latter case, as an examination of the opinion will disclose, the cross complaint was a verified pleading, and our consideration of its sufficiency had reference to the *prima facie* evidence which it afforded in support of the appointment of a receiver, and not its sufficiency as a pleading demanding other affirmative relief. There is, therefore, no actual inconsistency between the two cases. Nor can we agree that the case of *Hursh* v. *Hursh,* in question, was not well decided in the respect to which reference has been made to it as above.

Upon an appeal like the one before us, we will necessarily

look into the record to ascertain whether an action was pend-
ing when the receiver was appointed, and to be informed as
to the general nature and scope of the proceedings which re-
sulted in his appointment. But such an examination of the
record ought not, and does not, involve any formal ruling
upon the sufficiency of the complaint as a demand for other
or more general relief. The doctrine of our cases is that the
averments of the complaint may be supplemented, and in ef-
fect enlarged, by the presentation of affidavits or the intro-
duction of oral testimony in support of an application for the
appointment of a receiver, and that all will be taken into
consideration in determining whether a receiver ought to be
appointed. *Barnes* v. *Jones*, 91 Ind. 161; *Pouder* v. *Tate*,
96 Ind. 330.

After a receiver has been appointed during the pendency
of the action, the cause, notwithstanding an appeal from such
appointment, remains in the *nisi prius* court for such further
proceedings as may be necessary in other respects, where, with
leave of court, amendments to, or changes in, the pleadings
may thereafter be made. *Shoemaker* v. *Smith*, 100 Ind. 40.

It is further contended by counsel that the appointment of
a receiver in this case amounted to a practical rescission of
the contract of sale to Brown & Son, and that neither the
complaint nor the evidence made a proper case for a rescis-
sion of the contract, since from the very nature of the trans-
actions attending and succeeding the sale, the parties could
not be placed *in statu quo*. The appointment of the receiver
did not, however, amount to a rescission of the contract in
any substantial respect. As was shown by the evidence, as
well as averred by the complaint, the property was transferred
to Brown & Son, and placed in their hands, as trustees merely,
for the payment of certain indebtedness, and that a contro-
versy had arisen between the plaintiff on the one side, and the
defendants on the other, as to the proper application of the
proceeds of that property. The appointment of the receiver,
therefore, only took the property out of the hands of Brown

& Son, as trustees appointed by the parties, and placed it in the hands of a trustee created by the circuit court, without assuming to restore the property in any sense to the firm of Naylor & Sidener.

The putting of the property in the hands of a receiver was a mere change of trustees, without, in any manner, disturbing the lawful ownership of such property. When property is conveyed in trust, its proper management and application, for the purposes of the trust, become the peculiar subjects of equitable jurisdiction.

The evidence introduced at the hearing of the motion for the appointment of a receiver was quite conflicting, but there was evidence tending to show that the greater part of the indebtedness which Brown & Son had assumed to pay, with the consent of their co-defendants, was not a proper charge against the firm of Naylor & Sidener, as it was constituted when its assets were transferred to them, the said Brown & Son.

Under such circumstances we can neither weigh the evidence nor rightfully overrule the discretion which the circuit court exercised in the appointment of a receiver in advance of the final hearing upon the merits of the controversy.

It may have been, and we must assume that it was, a proper precautionary measure for the preservation of the fund which the property had created.

The order appealed from is affirmed, with costs.

