MILLER ET AL. *v.* ST. LOUIS UNION TRUST COMPANY ET AL.

[No. 25,049.   Filed October 14, 1931.]

*John G. Reidelbach, Louis A. Reidelbach* and *John M. Spangler,* for appellants.

*Ralph E. Horner* and *Robert E. Thompson,* for appellees.

MYERS, J.—This is an appeal from an order of the court appointing a receiver in a mortgage foreclosure proceeding to collect the rents and profits from the mortgaged land after decree but prior to sale and during the year allowed for redemption.

The prominent facts in this case, briefly stated, are that appellee St. Louis Union Trust Company, on June 12, 1925, commenced suit on a note and to foreclose a real-estate mortgage securing the same. The note and mortgage were executed by appellees Reed and Reed, who thereafter, by deed, conveyed the mortgaged premises to appellee Bond, who, prior to this suit, conveyed the land to appellant George T. Miller, present record-title owner. The unverified complaint contained allegations relative to the appointment of a receiver and prayed that one be appointed, but, on motion of appellant George T. Miller, these allegations, on October 6, 1925, the date the foreclosure proceedings were docketed for hearing, were, by the court, stricken out. Immediately following this action of the court, the record discloses what appears to be an explanatory statement as follows: "Plaintiff shows the filing on October 2nd, 1925, of a verified application for the appointment of a receiver, without notice, in these words, to wit." Then follows a copy of the application, verified by an affiant "as he is informed and verily believes." Its title and docket number are the same as that of the original complaint. There is no order-book entry showing the filing of the application. It was indorsed "Filed Oct. 2, 1925, W. F. Hoover, Clerk, Pulaski Circuit Court." Appel-

lants Miller and Miller then filed a separate and several answer in general denial to the complaint. Thereupon, the pending cause was submitted to the court for trial, which resulted in the usual final decree.

At the time and following the entry of the decree, it appears that, on motion, "plaintiff's application for the appointment of a receiver" was submitted to the court for trial over the objection of appellants, who appeared specially and only for that purpose. The court then proceeded to hear the evidence adduced in support of the application, and, being sufficiently advised, found "that a receiver should be appointed to take charge of the real estate and account for the rents and profits therefrom during the year of redemption," to which appellants reserved an exception, and, over their objection, the court rendered judgment and appointed a receiver, to which action of the court appellants excepted. The second day, October 8, after the trial and the appointment of a receiver, appellants moved the court to modify its finding and judgment appointing a receiver by striking it out and expunging it from the record. Errors are assigned on the overruling of the objections to the submission of the application for trial; the overruling of the "objections to the judgment and order appointing a receiver"; and the overruling of the motion to modify.

The first error is not well assigned, for the reason no cause was suggested to the court for a delay. The second error is subject to criticism for uncertainty, but since the record discloses a proper basis for the conclusion that this assignment was evidently intended to challenge the order of the court appointing a receiver, we may regard it as sufficient to question the proceedings which resulted in the appointment. *Sullivan Electric, etc., Co.* v. *Blue* (1895), 142 Ind. 407, 409, 41 N. E. 805; *Hursh* v. *Hursh* (1884), 99 Ind. 500. Inasmuch as we are only concerned with the action of

the court in appointing a receiver, and the second assignment questions that action, the third error is unimportant.

When the attention of the court was first called to the application for a receiver, the cause of action to which it was ancillary was still pending, but no steps were taken thereon until immediately after the court had announced its findings and had formally pronounced judgment in the main action. The court was in regular session and appellants had answered the complaint after the allegations relative to a receiver had been stricken out. They appeared specially and objected to the submission of the application for trial, but, at the conclusion of this hearing, for anything appearing, they entered a general appearance and objected to the appointment of a receiver and took an exception to the order of appointment. The mere fact that the application prayed for the appointment of a receiver without notice does not overcome the record-showing that appellants had notice and were actually in court making objections to the proceedings and reserving exceptions to the various judicial steps.

Having determined that appellants were in court upon sufficient notice of the application, this case must be distinguished from that class of cases where the appointment was made without notice. It must be kept in mind that the court found that a receiver should be appointed only for the year of redemption. The judgment was that a receiver be appointed "to receive and account for the rents and profits from said real estate pending sheriff's sale and during the year of redemption." There was no motion to modify the judgment in conformity with the finding. Hence, we have the single question: Was the court justified in making the order appointing a receiver?

In this jurisdiction, it is quite well settled that courts of equity may, in proper cases, appoint receivers to secure the application of the rents and profits before and after sale in mortgage foreclosure proceedings. We have a statute giving courts of equity this power when it appears that the mortgaged property "is in danger of being lost, removed or materially injured, or when such property is not sufficient to discharge the mortgage debt," or when it is necessary "to protect or preserve, during the time allowed for redemption, any real estate or interest therein sold on execution or order of sale, and to secure to the person entitled thereto the rents and profits thereof." §1300 Burns 1926, cls. 4, 6.

It appears from the allegations of the application that neither the mortgagors nor the present owner of the mortgaged land resided thereon; that they were not residents of Pulaski County; that the taxes on the land were permitted to go delinquent and the trust company was required to pay them in order to protect its mortgage security; that the mortgaged premises, describing 200 acres, would not sell for a sufficient sum to satisfy plaintiff's debt; that the improvements on the farm were deteriorating, and, unless a receiver was appointed to take charge of and manage the same, the land would lay idle during the year of redemption and continue to deteriorate until it would be impossible to sell the same for a sufficient sum to pay and discharge the indebtedness due the plaintiff; that all the defendants are insolvent and a deficiency judgment would be uncollectable.

At the trial, October 6, the evidence submitted to obtain a receiver was not contested. The only proven material facts were: That the fair cash market value of the 200 acres of land covered by the mortgage was between $60 and $65 per acre; improvements—fences about all down, posts and wire rotten, and the physical condition of the buildings bad; no one will furnish ma-

terial to keep them up; barn ready to fall down; taxes unpaid; the crops on the land for the year 1925 were 1,190 bushels of oats, soy beans, amount not stated, and corn 80 to 85 acres in the field; financial condition of Reed, mortgagor, not known; neither he nor the present owner resided on the farm or in the county of Pulaski; the land was occupied by a tenant; on the morning of the day of the trial, the then owner of the land "said he was going to let them foreclose. He was going to get the crops and wanted to know how soon I [the tenant] could haul the oats and start cribbing the corn." To this evidence may be added the facts before the court in the main case, that judgment had been rendered in the sum of $16,257.69 and costs, which included the taxes for the year 1924, payable in 1925, the decree foreclosing the mortgage, and order of sale.

At this point, answering the claim that the application was not properly verified, it is sufficient to say that, while it was not verified in positive terms, and, therefore, of no probative force upon the trial (*Hizer* v. *Hizer* [1929], 201 Ind. 406, 169 N. E. 47; *Jordan* v. *Walker* [1926], 197 Ind. 365, 151 N. E. 2; *Ledger Publishing Co.* v. *Scott* [1923], 193 Ind. 683, 141 N. E. 609; *Kent, etc., Grocery Co.* v. *George Hitz & Co.* [1918], 187 Ind. 606, 120 N. E. 659; *Mannos* v. *Bishop-Babcock-Becker Co.* [1914], 181 Ind. 343, 104 N. E. 579), and of itself insufficient to sustain the appointment of a receiver, it was nevertheless technically sufficient to invoke the jurisdiction of the court to hear and determine the necessity for such appointment. *Supreme Sitting, etc.,* v. *Baker* (1893), 134 Ind. 293, 314, 33 N. E. 1128, 20 L. R. A. 210.

The facts stated in the application were sufficient to warrant the court in appointing a receiver pending sale

under clause 4, *supra*, for inadequacy of security to pay the mortgage debt, and under clause 6, *supra*, to protect and preserve the property after sale and during the year of redemption. *Harris* v. *U. S. Sav. Fund, etc., Co.* (1896), 146 Ind. 265, 269, 45 N. E. 328; *Leader Pub. Co.* v. *Grant Trust, etc., Co.* (1915), 182 Ind. 651, 108 N. E. 121; *Hursh* v. *Hursh, supra; Pouder* v. *Tate* (1884), 96 Ind. 330; *Main* v. *Ginthert* (1883), 92 Ind. 180, 185.

Appellants challenge the evidence to support the finding of the court. The application will be treated as if there was no attempt to verify it. The market value of the land is shown by the evidence to be less than the judgment in a substantial amount. True, as claimed by appellants, there was no evidence of insolvency on the part of the primary obligor, and hence the insistence of insufficient evidence. We are well aware that, in the appointment of a receiver, the court exercises an extraordinary equitable remedy. Generally speaking, this remedy will be withheld until it is made to appear that the applicant therefor is without a legal remedy "as complete, efficient and effective as that in equity." High, Receivers (4th ed.) §10; *Drew* v. *Town of Geneva* (1898), 150 Ind. 662, 667, 50 N. E. 871, 42 L. R. A. 814. However, in mortgage foreclosure proceedings, as here, this court has construed clauses 4 and 6, *supra*, as authorizing the appointment of a receiver to collect the rents and profits pending sale and during the year of redemption where the mortgaged property is in the possession of a tenant and is insufficient to discharge the mortgage debt. *Pouder* v. *Tate, supra; Hursh* v. *Hursh, supra; Leader Pub. Co.* v. *Grant Trust, etc., Co., supra*.

Furthermore, it appears from the evidence that the 1924 taxes were permitted to go delinquent and were

paid by appellee trust company; that for aught appearing, and the inference which might be drawn from the expressions of the record-title owner to his tenant, the 1925 taxes, payable during the year of redemption, would not be paid by either the judgment debtor or record owner, and to the extent of delinquent taxes, at least, the mortgage security would be imperiled. Under such circumstances, it would seem that justice between the parties would justify the action of the court in appointing a receiver to collect the rents and profits of the lands during the year of redemption.

The order appointing a receiver is affirmed.