HAWKINS ET AL. *v.* ALDRIDGE ET AL.

[No. 26,740. Filed March 19, 1937.]

*George H. Koons, Richard L. Ewbank, William H. Eichhorn, Robert L. Smith* and *Lee F. Sprague,* for appellants.

*Urban T. Bonifas, James R. Emschwiler, Tod Whipple* and *Gov. Hutchinson,* for appellees.

FANSLER, J.—This is an appeal from an interlocutory order appointing a receiver *pendente lite,* without notice. The proceeding is ancillary to the principal action, which seems to sound in tort and seek a money judgment. When the petition for the appointment of the receiver was filed, the action had been pending for more than a year. The defendants had been served with process, were in court by counsel, and had filed numerous pleadings.

The complaint is too long to be made a part of the opinion. It is not verified. It alleges that, upon the death of Nathan B. Hawkins, certain of his heirs, including his widow, entered into a partnership, and that the defendant, Morton S. Hawkins, became managing partner and took possession of the estate for the partnership, and acted as agent for his sisters and mother, who were codefendants; that the fact that a partnership existed was fraudulently concealed from the plaintiffs; that he transacted all of the business of his mother and sisters in his own name; that in 1918, in his own name, he, fraudulently and in collusion with his mother and sisters, and acting as their partner, organized "a family corporation" for the purpose of defrauding and cheating the plaintiffs; that he thereupon proceeded to organize, as partner, and acting for his mother and sisters, "divers sham subsidiary corporations which they owned and controlled as partners to fraudulently and unlawfully and by gross misrepresentation sell to these defendants and other persons various worthless corporate stocks"; that he sold various worthless stocks to the various plaintiffs for sums aggregating $4,783; and that he in the same manner defrauded a large number of other persons; that the money used in the promotion of these enterprises was furnished by all of the defendants from the assets of the partnership, which consisted of the estate of Nathan B. Hawkins; that there-

after, and as part of the scheme to defraud the plaintiffs and to prevent the collection of any amounts due them, the defendants entered into a fraudulent trust agreement, by the terms of which Morton S. Hawkins, his mother, and sisters, conveyed certain property to Jane B. Coughlin as trustee. The property involved in the trust agreement is certain claims against one A. A. Kist and others, of Portland, Indiana, relating to a partnership in newspapers, and certain promissory notes of the Hawkins Mortgage Company. It is further alleged that plaintiffs "and other persons similarly situated have no adequate remedy at law; in this, that Morton S. Hawkins has no property subject to execution and that all of the property that would and should be subject to execution has been concealed, transferred and involved among said defendants for the sole purpose of cheating and defrauding plaintiffs; that unless the broad powers of a court of equity are invoked, these plaintiffs and others similarly situated and to whom the defendants are justly and equitably indebted by reason of their fraud and the concealment thereof, will be without remedy and their wrongs go unrighted;" that the funds and money received from the sale of fraudulent stock was used in purchasing certain real estate in the city of Portland, which is described; that, as part of the estate of Nathan B. Hawkins, certain other described real estate came into the hands of the defendants; that a certain fraudulent suit had been brought in the Jay Circuit Court for a partition of said property by Genevra I. Hawkins; that part of the funds derived from the conspiracy to cheat and defraud were invested in a dairy farm; that plaintiffs had obtained a money judgment against Morton S. Hawkins for their claims, but at the time they did not know that his mother and sisters were partners in the fraudulent partnership; that the parties are non-residents of the state of Indiana; that all of the

conveyances of real estate between the parties were unlawful and made for the purpose of cheating, defrauding, and concealing the property of said partnership and ought to be set aside; that the property of the partnership is being wasted, squandered, and misapplied, and the proceeds applied to the individual and private use of the partners; "that an accounting should be had as the only equitable and proper means by which the matter can be determined; that unless the defendants are restrained they will further convey and involve and encumber the aforesaid property to the great and irreparable injury of the plaintiffs herein." The prayer is that a trust be declared in all of the property of the defendants, and that it be found to be held in trust by the defendants for the benefit of the plaintiffs and all others defrauded by the illegal acts of the defendants, and that the court appoint a trustee or receiver, and do all things necessary to maintain the *status quo* of such trust, and that the defendant, Genevra I. Hawkins, be required to account for all of the acts of her agent, Morton S. Hawkins, "and to pay these plaintiffs the amount of the judgment obtained by them in the Adams Circuit Court, as aforesaid; . . . that a receiver be appointed for the property of the copartners, consisting of Genevra I. Hawkins, Morton S. Hawkins, Zella Jones and Stella Faul, and that he be authorized to sequester all assets consisting of real and personal property;" that the conveyances of the real estate of the defendants be set aside and that a commissioner be appointed to convey the real estate to a trustee, and "that the same be sold and the proceeds derived therefrom be turned over to the receiver to be applied to the satisfaction of the amount due these plaintiffs and such other persons that may be similarly situated and that a receiver be authorized and permitted to make distribution and to receive claims from all persons other than the defendants who have been defrauded by the unlaw-

ful and fraudulent acts . . . ; and the court to take all
steps in equity to restore to the rights of all persons
cheated or defrauded whether they be made plaintiffs
to this action now or come in by method of claim to the
receiver, and to set aside all trust agreements and as-
signments thereof and to declare the same null and
void."

No bond was tendered at the time the complaint was
filed, and no restraining order *pendente lite* was sought,
although the necessity for a restraining order, enjoin-
ing the defendants from conveying and encumbering
their property, was alleged. After all of the defendants
had appeared by atttorney, filed various pleadings, and
were in court, a petition was filed, verified by one of the
attorneys for the plaintiffs, reciting "that this is a suit
for a dissolution of a partnership, accounting, injunc-
tion and receiver"; that this cause concerns the partner-
ship ownership of certain property, real and personal;
that, since the bringing of the action, the defendants
have conveyed certain described pieces of real estate
belonging to the partnership, of the probable value of
$30,000, and that the defendants are drawing $1,000
per month rentals from this property; that the defend-
ant, Genevra I. Hawkins, has sold a number of fine
cattle of the partnership property, of the value of
$10,000. Whether the purchase price was received by
her is not alleged. "That plaintiffs are informed and
believe and allege that the defendants will, unless a
receiver is appointed for the property of said partner-
ship *pendente lite,* dispose of all of said property and
secrete and remove the same from the jurisdiction of
this court and deprive this court of jurisdiction over the
same." There is a further allegation that the defend-
ants are, and have been, filing dilatory pleadings, "such
as Pleas in Abatement and Changes of Venue," for the
purpose of delaying the trial in order that they might

convey their property for the purpose of cheating and defrauding the plaintiffs; "that if notice is given to the defendants herein they are threatening to and will leave the state of Indiana and remove themselves and their property from the jurisdiction of this court; that an emergency exists, making it necessary to appoint a receiver as the delay being caused by the defendants and their selling and disposing of the property and removing the same from the jurisdiction of the court will deprive these plaintiffs of any adequate remedy at law and that if a notice is given to the defendants, they will remove all their property and convey the same and will jeopardize the control and custody of the property."

The petition is verified, partly upon information and belief, and to that extent it cannot properly be considered. Its allegations refer only to facts indicating that the defendants are about to dispose of their property, or otherwise defeat recovery. The complaint is not verified, and there is no affidavit or proof of any kind concerning the truth of the allegations of the complaint, or tending to establish that the plaintiffs have a meritorious cause of action. Upon the filing of the petition, a receiver was immediately appointed, without notice to the defendants or their attorneys.

It is elementary that a receiver should not be appointed until the plaintiff makes proof to the satisfaction of the court that there is at least a probability that he will ultimately be entitled to a judgment or decree. High on Receivers (4th Ed.) §8, p. 14; 53 C. J., §13, p. 28.

A court of equity will not lend its extraordinary aid by appointing a receiver for the property of a partnership unless an actual partnership is shown by satisfactory proof. High on Receivers (4th Ed.) §476, p. 659.

Appellees contend that, where the appointment of a receiver is prayed for as part of the final relief, no notice is required other than the summons, and ██ that there can be no objection to appointing a receiver in open court for want of the presence of the defendant at the time, or for want of cause shown by affidavit, where the defendants have appeared to the action. They rely upon *Newell et al.* v. *Schnull et al.* (1881), 73 Ind. 241, and *Winchester Electric Light Co.* v. *Gordon et al.* (1896), 143 Ind. 681, 683, 684, 42 N. E. 914, 915. The earlier case involves the appointment of a receiver as final relief. There is some dictum in the other case, which, standing alone, might lend support to the contention that, if the defendants have entered a general appearance in an action in which a receiver is asked as part of the ultimate relief, the court may entertain a petition for the appointment of a receiver *pendente lite* if filed in open court, and that a receiver may be appointed without any evidence being introduced to support the petition, and without the defendants or their attorneys being in court, or having actual notice that the petition for a receiver *pendente lite* is filed or is being heard. The statement is question is as follows: "And had the application been granted and the receiver appointed in open court, there could have been no valid objection urged to such appointment for want of the presence of the defendant in court at the time, having once appeared, or for want of cause shown by affidavit for such appointment." That this dictum was not intended to have the meaning attributed to it by appellants, is indicated by the statement in another part of the opinion: "The reason for not requiring the cause to be shown by affidavit, where the defendant has appeared, is because he may protect himself by objecting to the competency of plaintiff's evi-

dence, or showing of cause for the appointment, cross-examine his witnesses and introduce countervailing witnesses and evidence, and failing in his opposition to the appointment, may take a bill of exceptions, incorporating the evidence and rulings of the trial court, and appeal to this court. All this implies that it must be done either in open court. or, if somewhere else, he must be present or have an opportunity to be present by notice of time and place." This latter language is inconsistent with the statement that there could have been no valid objection for want of the presence of the defendant in court at the time. If not present, he could not protect himself in the manner described. Where the defendants have entered a general appearance, they are entitled to be notified in person, or through their counsel, of any hearing where evidence will be taken either on the merits of the case or upon interlocutory motions or petitions. There is no pretense that the defendants or their attorneys had any notice that the petition for the appointment of a receiver had been filed, or that it was to be heard, or that they had any opportunity to object or to offer evidence, or to question the sufficiency of the evidence offered. The petition on its face shows that plaintiffs were seeking to have the appointment made without the knowledge of the defendants.

On appeal, the sufficiency of the complaint to withstand demurrer will not be tested. The complaint in the case at bar would seem to state facts sufficient to entitle the plaintiffs to a money judgment. They sue as individuals, and not as stockholders in a corporation or members of a partnership. Whether a group action may be maintained in such a case, we need not consider.

There are certain principles, settled beyond question, which control the appointment of receivers without no-

tice. It is said in *Continental Clay & Mining Co.* v. *Bryson* (1907), 168 Ind. 485, 489, 81 N. E. 210, 211, 212, upon abundant authority, that, before a receiver will be appointed without notice, "it must be a case of imperious necessity and when protection cannot be afforded the plaintiff in any other way." There must be a showing of a probability that plaintiff will be entitled to a judgment or decree; that there is necessity for a receiver, and that there is necessity for the appointment without notice. In *Henderson* v. *Reynolds* (1907), 168 Ind. 522, 529, 81 N. E. 494, 497, the early case of *Indiana, etc., R. Co.* v. *State* (1852), 3 Ind. 421, is cited with approval as follows: "The principle here asserted is, that the complaining party must not only show that an immediate injury is about to be inflicted, but also that he could not reasonably have anticipated it in time to give the requisite notice. Otherwise the complainant might always make a case of emergency, by waiting until the act he desires to have restrained is upon the point of being done." In the instant case, the complaint, filed more than a year before the court was asked to act without notice, alleged some of the same facts as to the intention of the defendants to dispose of their property that are alleged in the petition for the appointment, and no reason is suggested why the appointment of a receiver *pendente lite* was not requested at the time the complaint was filed. The intervening year would have given ample time for notice to the defendants. A receiver will not be appointed where the plaintiff has a remedy at law, unless there is a showing that the remedy at law would not be adequate or effectual. *Miller et al.* v. *St. Louis Union Trust Co. et al.* (1931), 202 Ind. 688, 178 N. E. 1; *Portage Brick Co.* v. *North Indiana Brick Co.* (1920), 189 Ind. 639, 128 N. E. 847; *Mannos et al.* v. *Bishop-Babcock-Becker Co.* (1914), 181 Ind. 343, 104 N. E. 579; *Robbins* v. *Reed* (1910), 174 Ind.

291, 91 N. E. 921; *Sallee* v. *Soules et al., Adm'rs* (1907), 168 Ind. 624, 81 N. E. 587; *Chicago & S. E. Ry. Co.* v. *Kenney et al.* (1901), 159 Ind. 72, 62 N. E. 26. "A receiver will not be appointed without notice when a court, as in this state, has authority to grant a temporary restraining order without notice, and where the issuance of such an order would afford ample protection until notice can be given." *Kent Avenue Grocery Co.* v. *George Hitz & Co.* (1918), 187 Ind. 606, 608, 609, 120 N. E. 659, 660. As part of the prayer for relief in their complaint, the plaintiffs ask for an injunction, but apparently filed no bond and did not press for that statutory relief *pendente lite.* Injunction would have furnished full protection. It is contended that, since the parties are alleged to be nonresidents of the state, an injunction or a restraining order was not available. But a restraining order without notice was available if notice could not be given. All of the defendants appeared generally to the action, and were in court by attorney, and notice of a restraining order to their attorneys would be notice to them. Attachment is a remedy at law, available to one seeking a money judgment, where the defendant has threatened to dispose of his property with intent to cheat, hinder, or delay his creditors, or where he is intending to leave the state with intent to defraud his creditors. Attachment would have provided ample relief. But here, also, a bond is required to protect the defendant.

In *May* v. *Greenhill et al.* (1881), 80 Ind. 124, where the complaint was in many respects similar to the one under consideration, it was held that the plaintiff had a full, complete, and ample remedy by attachment or garnishment, and that a receiver should not have been appointed.

"The exercise of the extraordinary power of a chancellor in appointing receivers, as in granting writs of

injunction or *ne exeat*, is an exceedingly delicate and responsible duty, to be discharged by the court with the utmost caution, and only under such special or peculiar circumstances as demand summary relief." High on Receivers (4th Ed.) §3, p. 6. It is said in *Kent Avenue Grocery Co.* v. *George Hitz & Co., supra,* on p. 608:

"Our statute provides that receivers shall not be appointed either in term or vacation, in any case, until the adverse party shall have appeared, or shall have had reasonable notice of the application for such appointment, except upon sufficient cause shown by affidavit. . . . It is apparent from the statute that it must be made to appear, either in the verified complaint or by affidavit filed at the time of the application, not only that there was cause for the appointment of a receiver, but also that an emergency existed requiring such appointment without notice. If sufficient reason for the failure to give reasonable notice is not shown by affidavit, the appointment is forbidden by statute and is erroneous. . . .

"Courts of equity exercise extreme caution in the appointment of receivers *ex parte.* They are averse to dispossessing a party of property prima facie his own, and placing it in the hands of a receiver without notice, and such action should not be taken except in cases of the greatest emergency demanding the immediate interference by the court. . . .

"It has been held that a receiver will not be appointed without notice when a court, as in this state, has authority to grant a temporary restraining order without notice, and where the issuance of such an order would afford ample protection until notice can be given and the matters presented can be determined after a hearing. . . . Section 1205 Burns 1914, §1148 R. S. 1881, provides among other things that a temporary restraining order may be granted when it appears in the com-

plaint at the commencement of the action, or during the pendency thereof by affidavit, that the defendant threatens or is about to remove or dispose of his property with intent to defraud his creditors, and §1207, *supra,* provides that in case of emergency restraining orders may be issued without notice."

The statutory remedy of attachment is a legal remedy, available without notice, upon giving bond, which would furnish all of the protection that was here sought by a receivership. There is no bond to protect the defendants where a receiver is appointed. The principles here referred to have long been well settled and repeatedly announced by this court from the earliest times.

There was no evidence, or offer of evidence, that the plaintiffs would probably be entitled to recover upon their complaint. There was no showing, or attempt to show, that the plaintiffs did not have an adequate remedy by restraining order, or injunction, or by attachment. There was no showing, or attempt to show, that the defendants' attorneys of record, appearing for them in this action, could not be notified.

Judgment reversed, with directions to set aside the order appointing the receiver.